**A. G. BARCLAY, Petitioner,**

v.

**C. C. PITTS SAND AND GRAVEL COMPANY, Respondent.**

No. A-10199.

Supreme Court of Texas.

Feb. 17, 1965.

Rehearing Denied March 17, 1965.

Short & Smith, Wichita Falls, for petitioner.

Jones, Fillmore, Robinson & Lambert, Wichita Falls, for respondent.

WALKER, Justice.

This suit was brought by A. G. Barclay, petitioner, to recover the damages he sustained when his automobile ran into a truck owned by C. C. Pitts, respondent, who is engaged in business under the name of C. C. Pitts Sand and Gravel. Respondent's employee, Joe Bollman, was the driver of the truck. The jury acquitted petitioner of contributory negligence and found that the collision was proximately caused by Bollman's failure to keep his truck under proper control. Judgment was rendered on the verdict in petitioner's favor, but the Court of Civil Appeals concluded that the proper control issue was an improper general submission of negligence. The judgment of the trial court was accordingly reversed and

the cause remanded for a new trial. 377 S.W.2d 750.

We granted petitioner's application for writ of error to consider the holding on which the Court of Civil Appeals based its judgment. Respondent had a number of points of error there which, if sustained, would have required that judgment be rendered in his favor. These points were overruled by the intermediate court, and the questions presented thereby were not brought here by application for writ of error.

The collision occurred at night on two-lane U. S. Highway No. 62 in the State of Oklahoma. Petitioner was driving north. Ahead of him and proceeding in the same direction were two loaded trucks owned and used by respondent in his business of hauling sand, gravel and crushed stone. It was raining and the asphalt pavement of the highway was wet and slick. The lead truck went out of control on a sharp and dangerous curve about 800 feet north of the crest of a hill. It jackknifed and came to a stop with the trailer in the east lane of the pavement and the tractor on the shoulder and in the ditch to the east.

Joe Bollman, who was driving the second truck, was some distance behind when this occurred. After passing the crest of the hill he saw the first truck blocking the highway ahead of him and attempted to "shut down" his own vehicle. The second truck then went out of control and jackknifed. It stopped at a point about 150 feet north of the crest of the hill with the trailer at right angles to and completely blocking the east traffic lane of the highway. The rear of the trailer was some two or three feet west of the center of the pavement, and the tractor was facing in a north-westerly direction. Before Bollman could get out of the truck, petitioner's automobile topped the hill and started down the slope to the north. Petitioner applied his brakes when he saw the second truck, but was unable to stop and skidded into the side of the trailer. He was seriously in-

jured and his automobile was damaged extensively in the collision.

Petitioner alleged that Bollman was negligent in driving at an excessive rate of speed, in failing to apply the brakes on his truck properly, in driving with defective brakes, in failing to keep the truck under proper control, and in turning sharply to the left shortly after he drove over the hill. The primary negligence issues submitted by the trial court, however, dealt only with excessive speed, defective brakes and proper control. No additional issues were requested by petitioner. The jury refused to find that Bollman operated the truck at excessive speed or with defective brakes, but found in response to Special Issue No. 7 that he "failed to keep the truck under proper control at the time and on the occasion in question." Special Issue No. 8, which inquired whether such failure was a proximate cause of the collision, was also answered in the affirmative. The term "proper control" was defined in the charge as "such control that a person of ordinary prudence would have kept under the same or similar circumstances." Respondent objected to Special Issue No. 7 on the ground that it constituted a general submission and combined several elements in a single issue. He also pointed out that in view of the specific issues concerning excessive speed and defective brakes, the proper control inquiry was a double submission of these two theories of negligence.

Special Issue No. 7 with its accompanying definition is a typical proper control submission. The issue is undoubtedly quite broad and embraces any and every act or omission on the part of a driver which affects his control of the vehicle he is operating. It has been held, for example, to include excessive speed, failure to apply brakes, defective brakes, failure to place automobile in neutral when it stalled, driving too slowly, and failure to turn to the right or left. See Northeast Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487; Schuhmacher Co. v. Holcomb, 142 Tex.

332, 177 S.W.2d 951; Choate v. Meredith, Tex.Civ.App., 330 S.W.2d 548 (writ ref. n. r. e.); Intges v. Dunn, Tex.Civ.App., 311 S.W.2d 877 (writ ref. n. r e.). See also Pope, Broad and Narrow Issues, 26 Texas Bar Jour. 921. When all acts and omissions raised by the evidence which affect control of the vehicle are specifically submitted, the more general issue on proper control need not be given. Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143; Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266. If it is given in that situation, moreover, the specific findings will control what would otherwise be a conflicting answer to the proper control issue. See Cunningham v. Suggs, Tex.Civ.App., 340 S.W.2d 369 (writ ref. n. r. e.).

■ Petitioner recognizes that the proper control inquiry is general in the sense that it encompasses a number of specific acts or omissions. He argues that it is sanctioned by long usage, and that there are fact situations such as the present case in which submission of the issue should be within the discretion of the trial court. The facts here are somewhat unusual in one respect. Unlike most of the cases where proper control has been submitted, Bollman's truck actually went completely out of control and any want of care on his part was causally related to the collision only in so far as it contributed to his loss of control. These circumstances do not, however, make the proper control issue any less general. And while a vehicle may go out of control as the result of negligence on the part of the driver, loss of control is not in itself an act or omission that might properly be characterized as want of ordinary care.

■ When a case is submitted on special issues, the court is required to give "the controlling issues made by the written pleadings and the evidence." Rule 279, Texas Rules of Civil Procedure. As pointed out in the article cited above, this Rule has been given one meaning in negligence actions and a somewhat different meaning

in other types of cases. Reasonably broad issues embracing several distinct and essential elements of a cause of action or defense have been upheld in a number of non-negligence suits. Even in negligence cases there are a few more or less general inquiries which may be submitted without fragmentation into their factual components. Examples are proper lookout, Texas & Pacific Ry. Co. v. Snider, 159 Tex. 380, 321 S.W.2d 280, Traywick v. Goodrich, Tex. Sup., 364 S.W.2d 190; attractive nuisance, Eaton v. R. B. George Investments, Inc., 152 Tex. 523, 260 S.W.2d 587; and discovered peril, Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112. It is nevertheless well settled that as a general rule and when the question is properly raised, special issues relating to either primary or contributory negligence should be restricted to specific acts and omissions which have been raised by the pleadings and evidence. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99; Kainer v. Walker, Tex.Sup., 377 S.W.2d 613.

■ Proper control issues have been submitted in many automobile negligence cases, but no decision has been found where the issue was attacked as a general submission encompassing several specific acts or omissions. While the effect of the issue when given without objection has been considered on a number of occasions, the issue itself has never been approved and upheld against such attack by any of our appellate courts. Professor Hodges takes the position that it should not be given if proper objection is made. Hodges, Special Issue Submission in Texas, § 39. We agree with this conclusion. The usual proper control issue is almost but not quite as broad as the submission in Kainer v. Walker, supra. In some but not all cases it encompasses every negligent act and omission raised by the evidence. Petitioner is undoubtedly correct when he says that its use would enable the trial court to eliminate many specific issues, but this end will be better served by resorting to an even more general submission. If

one party wishes to submit negligence generally and the adverse party has no objection, the jury can be asked whether the latter failed to exercise ordinary care as was done in the Kainer case. This will not only make it unnecessary to submit any specific negligence issues but will also avoid the confusion that results from giving an issue which is neither truly specific nor altogether general and which frequently includes acts or omissions that are submitted specifically in the same case.

■ It is doubtful that a jury of laymen will always understand the scope and import of the proper control issue as it is usually submitted. The jurors may not realize for example, that it should be answered in the affirmative if they conclude that the vehicle was being operated at an excessive rate of speed or with defective brakes. And any attempt to define "proper control" in terms of the specific elements raised by the evidence will probably lead to many reversals that would be unnecessary if negligence were submitted either specifically or globally. It is also clear that the jurors might return an affirmative answer to the proper control inquiry even though they were unable to agree that the driver in question was guilty of any particular act or omission. In the ordinary case moreover, a party who wished to attack such a finding as having no support in the evidence would be faced with an almost insurmountable burden in the appellate court. He should not be required to assume that burden unless he has consented to a general submission by his failure to object. In our opinion an inquiry concerning proper control simply has no place in the charge when appropriate objection is made by the party against whom it would otherwise be given.

■ Petitioner also says that if Special Issue No. 7 is too general, the fault lies in the definition of "proper control." He contends that respondent waived any right he may have had to complain of the issue on that ground when he did not object to the definition. There is no merit in this contention and the second point of error is overruled. The scope of the proper control issue was not broadened and could not reasonably be narrowed by the definition, which was included in the charge to avoid the necessity of giving a separate issue inquiring whether Bollman's failure to keep the truck under proper control was negligence.

The judgment of the Court of Civil Appeals is affirmed.

NORVELL, Justice (concurring).

In discussing ultimate fact issues we may easily drop into a confused metaphysical situation similar to that encountered when we attempt to distinguish between a fact and a conclusion.[1] The rationale of the rule of Fox v. Dallas Hotel Company, 111 Tex. 461, 240 S.W. 517 (1922) is not invariably followed even in the field of negligence law. The accepted method of submitting discovered peril is obviously inconsistent with the Fox concept of "specific acts of negligence alleged and proven," and this is demonstrated by the issue inquiring if a locomotive engineer "failed to exercise ordinary care in the use of the means at hand consistent with the safety of himself and the train he was operating and the occupants thereof, to avoid the injury * * *."[2]

1. "A comparatively slight acquaintance with formal metaphysics is enough to assure us that the apparently simplest 'fact' is indeed a conclusion, involving in its affirmation an inference from certain impressions of the sense upon the assumption of a major premise, itself the creature of past experience." Learned Hand, "Historical and Practical Consid-

erations regarding Expert Testimony", 15 Harvard Law Review, 40, 50.

2. See Sisti v. Thompson, 149 Tex. 189, 229 S.W.2d 610, l.c. 613, (1950) in which the above language appears in an issue quoted in the opinion. The Court held, however, that another issue of the discovered peril group of issues was defective because it was too inclusive or global

Similarly the issue of the failure to keep a vehicle under proper control is contrary to the argument of the Fox case, but it need not necessarily be condemned for that reason. In Northeast Texas Motor Freight Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487 (1942) this Court held that the issue of whether a driver "on the occasion in question * * * failed to have his truck under proper control," encompassed inquiries as to whether the driver was operating his vehicle "at such rate of speed as that he could not stop it within the range of vision," and as to whether such driver "failed to reduce its speed upon meeting the blinding lights of an approaching automobile." This Court said that "[t]he issue given (failure to have the truck under proper control) and the two refused (above set forth) related alike to the manner in which (the driver) operated his truck immediately before" the collision and that "[t]he several inquiries under consideration were merely various phases and different shades of meaning of one ultimate * * * fact issue, that is, lack of proper control * * *."

In Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951 (1944) this Court in effect held that the questions of whether the defendant failed to have the brakes of his automobile in good working order and whether he was negligent in causing his automobile to move to and upon his left-hand side of the highway were encompassed within the issue of whether the defendant failed to keep his automobile under proper control.

The cases of Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266 (1944) and Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143 (1946) hold that when the specific elements of lack of proper control are given it is not necessary to submit the broader issue. In Blaugrund, however, it is clear-

ly intimated that excessive speed immediately before the collision is an element of lack of proper control. In the Triangle Cab Company case it was held that a submission of the "lack of proper control" issue was unnecessary as the Court had submitted (1) failure to keep a proper lookout (2) excessive speed (3) operating the motorcycle too close to the rear of a taxicab and (4) a failure to turn the motorcycle to the left. The failure to keep a proper lookout is not an element of proper control and I do not understand the Triangle Cab case to so hold. The opinion simply lists the issues given and states that all the elements of proper control raised by the evidence were submitted by the specific issues given.

When the Blaugrund and Triangle Cab cases are read with Northeast Motor Freight Lines v. Hodges and Schumacher v. Holcomb, a rather definite concept of "lack of proper control" emerges. The critical time involved in the inquiry is that existing immediately before the collision. Lack of proper control at such time includes the following elements, (1) the driving of a motor vehicle in a defective condition which renders it difficult or impossible for a driver to properly control the car under the attendant circumstances, such as driving an automobile with defective brakes, (2) the driving of a motor vehicle at such speed as renders its proper control difficult or impossible, such as the driving of a vehicle at a rate of speed that would prevent the driver from stopping the car within the range of his vision, or by following too closely behind another vehicle, and (3) the failure of the driver to properly guide the course of the vehicle when collision became imminent, such as failure to drive the car either to the right or to the left.

I recognize that the "lack of proper control" issue is global in nature and that there is considerable force to the argument that

in nature. It is sometimes far from clear whether an issue is global, ultimate or simply the result of a granulation of an ultimate issue. This difficulty is inherent in the special issue practice and

hence precedent or what has been approved heretofore is important in this area. Such precedents should not be disturbed in the absence of demonstrated inadequacy or malfunction.

this type of issue should not be used in a special issue practice. But we have good precedent for the use of broad and inclusive issues under certain circumstances and it is a desirable objective to restrict the number of issues to be given in negligence cases. I would not extend the scope of the lack of proper control issues beyond those elements which have heretofore been recognized by this Court and those which are fairly encompassed within such opinions. I would, however, hold it permissible to submit the "lack of proper control" issue provided it be restricted by proper definition to such of the elements above mentioned as are raised by the evidence.

So far as the judgment in this particular case is concerned I concur in the Court's action in affirming the judgment of the Court of Civil Appeals which reverses the judgment of the trial court. This, for the reason that at least two important elements of the "lack of proper control" issue were specifically submitted, namely, driving the truck with improper brakes and a failure to properly steer such truck when collision was imminent. While, in my opinion, a party should be allowed to submit the broad "lack of proper control" issue, he should not also be permitted to submit specific issues inquiring as to the various elements encompassed within the concept of proper control. This would be obviously unfair. A party would have an opportunity to prevail upon the answers to specific issues and failing in this, contend that nevertheless he was entitled to prevail upon an unsubmitted element of lack of proper control should he receive a favorable answer to such broader issue. A litigant must either

go global or specific. He cannot go both ways.

POPE, Justice (concurring).

It is a solemn moment when we overturn a general practice that has been acceptable to the bench and bar for more than a quarter of a century. The failure to exercise proper control has been repudiated as an issue in personal injury litigation though it has become a substantial part of our trial practice.[1] I have failed to find any previous judicial criticism of the issue. On the contrary it has been either expressly or tacitly sanctioned by many judges who have carefully considered it.[2]

It is my judgment that we unduly confuse the bench and bar when we sweep aside a practice that has been approved or condoned in *North East Texas Motor Lines v. Hodges*, 138 Tex. 280, 158 S.W.2d 487; *Schuhmacher Co. v. Holcomb*, 142 Tex. 332, 177 S.W.2d 951; *Blaugrund v. Gish*, 142 Tex. 379, 179 S.W.2d 266; *Triangle Cab Co. v. Taylor*, 144 Tex. 568, 192 S.W.2d 143; *Gray v. Newberry*, Tex.Civ.App., 380 S.W.2d 22, 23, ref. n. r. e.; *Brown v. Vigeon*, Tex.Civ.App., 367 S.W.2d 727, ref. n. r. e.; *Cunningham v. Suggs*, Tex.Civ. App., 340 S.W.2d 369, ref. n. r. e.; *Martinez v. Welcome*, Tex.Civ.App., 335 S.W.2d 254, ref. n. r. e.; *Choate v. Meredith*, Tex.Civ. App., 330 S.W.2d 548, ref. n. r. e.; *Shiflett v. Bennett Printing Co.*, Tex.Civ.App., 330 S.W.2d 220; *Anderson v. Garza*, Tex.Civ. App., 311 S.W.2d 910, ref. n. r. e.; *Intges v. Dunn*, Tex.Civ.App., 311 S.W.2d 877, ref. n. r. e.; *Jenkins v. Hennigan*, Tex.Civ. App., 298 S.W.2d 905, ref. n. r. e.; Har-

1. " * * * It is usual that either the plaintiff or the defendant, or in many instances both, urge the court to submit a proper control issue * * *." Lambert, The Bugaboo of 'Proper Control', 27 Texas Bar Journal, 869.

2. Chief Justice Alexander, Chief Justice Hickman, Justices Brewster, Sharp, Harvey, Folley, Critz, Slatton, Simpson, Smedley, Taylor, Norvell, Culver, W. O. Murray, Edward Smith, D. Walker, O'Quinn, Combs, Graves, Monteith, Cody, Atwood McDonald, Hall, R. L. Murray, C. Walker, Hamblen, Pope, Hunter Barrow, Anderson, Hightower, Woodruff, Bell, Werlein, Gray, Archer, Hughes, Wilson, Frank McDonald, Tirey, Fanning, Chadick, Charles Barrow, Collings, Grissom, Walter, Stephenson, McNeill and Davis.

rison v. King, Tex.Civ.App., 296 S.W.2d 344, ref. n. r. e.; Serna v. Cochrum, Tex. Civ.App., 290 S.W.2d 383, ref. n. r. e.; Holly v. Bluebonnet Express Co., Tex.Civ. App., 275 S.W.2d 737, ref. n. r. e.; Fullingim v. Dunaway, Tex.Civ.App., 267 S. W.2d 483; Tripp v. Watson, Tex.Civ.App., 235 S.W.2d 677, ref. n. r. e.; Fisher v. Leach, Tex.Civ.App., 221 S.W.2d 384, ref. n. r. e.; Justiss v. Naquin, Tex.Civ.App., 137 S.W.2d 72, error dism. judg. cor.; Hampton Co. v. Joyce, Tex.Civ.App., 80 S.W.2d 1066.

The issue was viable by 1935, Hampton Co. v. Joyce, 80 S.W.2d 1066, and by 1942 it was deemed meritorious enough to receive the commendation of a unanimous court. Commissioner Brewster, in an opinion approved by the Supreme Court, said that an issue inquiring about proper control would excuse other lesser included elements. North East Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487. A request for the specific issues had been timely made and refused. The court wrote, " * * * The several inquiries under consideration were merely various phases and different shades of meaning of one ultimate defensive fact issue, that is, lack of proper control of his truck by Hodges. Having given such issue once in the form of Special Issue No. 15–G, (control) * * * the trial court properly refused to repeat it twice in other language as carried in requested issues 7 (inability to stop within the range of vision) and 12." (failure to reduce speed). The court then gave sound reasons for accepting and recommending the issue to the bench, bar, and public, saying, "It has never been the policy of the law to lengthen and complicate special issue charges by requiring trial courts to give issues that merely submit various phases or other shades of meaning of an issue already in the charge. It is required only that each controlling issue raised by the pleadings and the evidence be submitted once, fairly, simply and succinctly. Otherwise, such charge could be drawn out to interminable length confusing not alone to the jury but to court and counsel as well." With one sentence the court could have condemned the issue, but instead, the court blessed it.

Fourteen months after the court considered Hodges, the Commission and Supreme Court again considered the issue in Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951. Commissioner Hickman wrote, "The finding that his (the plaintiff's) failure to keep his automobile under proper control was not the sole proximate cause of the injuries includes the finding that his causing the automobile to move to and upon his left-hand side of the highway was not the sole proximate cause of the injuries. * * * In submitting the issue of whether loss of control was the sole proximate cause the charge did not confine the jury to a consideration of any particular cause of the loss of control, but the issue covered loss of control from any and all causes, which includes defective brakes." Instead of destroying the issue, as it could have, the court said that a charge which included the control issue and left out other lesser included elements, "fairly submitted the controlling issues raised by the pleadings and evidence, as provided in Rule 279, Texas Rules of Civil Procedure." Two weeks later, the Supreme Court, through Mr. Justice Critz in Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266, again discussed the same issue. The court held that the control issue should not be submitted when its elements are submitted. One submission is enough. Mr. Justice Slatton in 1946 in Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143, cited Blaugrund, but did not disapprove the control issue. With the Supreme Court's several opinions before them, the bar began practicing law upon the principles announced in Hodges, Holcomb, Gish and Taylor. I would not disturb this practice.

The special issue system in Texas, for some time, has been troubled with the proliferation of issues in personal injury litigation. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, properly decided

that an issue was too global when it asked whether a party was contributorily negligent, and this court, for good reasons stated in 1953 that it did not desire to depart from that settled practice. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99. In Roosth this court first noted that personal injury charges were anomalous, because in all other classes of litigation, fewer and broader issues have been consistently approved.[3] It then expressed justifiable concern about a departure from existing practices, the Fox case in particular, because it "would in our judgment cause undue confusion." It is that same judicial restraint that I would now exercise in this case.

The genius of the common law is its capacity to solve problems, and this body of law which we have today dispatched, is a classic example. The exercise of proper control, as an issue, admittedly eliminates many other issues. It is doing and can do what nothing and nobody else has been capable of doing. That issue, as Forsyth said of the jury system itself, arose, "silently and gradually out of the usages of a state of society." It arose, not as a result of overruling Fox, new or amended rules, actions of joint committees or acts of the legislature. It has grown up in the shadow of Fox and until now has been able to gather up many issues and simplify the charge.

It is another example of the capacity of the common law to develop and preserve the jury system itself. In this case it is corrective of the chief problem of civil jury trial in Texas, a surfeit of special issues.

The problems of the special issue charge are those of profusion, conflicting answers, and confusion to the jurors. Those problems did not arise from, nor are they aggravated by, the issue on exercise of proper control. Instead of causing profusion of issues, that issue eliminates lesser included elements. Instead of causing conflicts, it is curative of them. A reading of all the cases which have discussed the issue, shows that the issue has produced no reversals by reason of conflicts. On the contrary, it has salvaged many and harmed none. Unlike other conflicting issues, any claimed conflict arising out of the exercise of proper control issue is resolved by giving effect to the narrow findings over the broader ones. Instead of confusion, it simplifies charges to the jury by shortening them. It reduces the number so the advocates can better argue their cases. Whatever confusion is produced by the issue finds its origin in a trial court's unnecessary submission of both the proper control issue and also the more specific elements included within it. The double submission should stop, and it will when this court tells trial judges that they can exercise their own judgments in giving

---

3. Hough v. Grapotte, 127 Tex. 144, 90 S. W.2d 1090, (domicile); Howell v. Howell, 147 Tex. 14, 210 S.W.2d 978, (divorce); Grieger v. Vega, 153 Tex. 498, 271 S.W.2d 85, 34 Tex.L.Rev. 138, (wrongful shooting death); City of Houston v. Lurie, 148 Tex. 391, 224 S.W. 2d 871, 14 A.L.R.2d 61, (fire hazard to life and property); Werner v. Brehm, Tex.Civ.App., 216 S.W.2d 991 (duress, ref. n.r.e.; Brown v. Brown, Tex.Civ. App., 256 S.W.2d 143, ref. n.r.e.; (common-law marriage); Viduarri v. Bruni, 179 S.W.2d 818, error ref.; Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453 (adverse possession); Jones v. Rainey, Tex.Civ.App., 168 S.W.2d 507, error ref. (damages to livestock); See Hodges, Special Issue Submission in Texas, § 40. Even, within the field of personal injury litigation, a broad submission of issues

has met with no opposition in many instances. What Judge Stayton called granulation of issues has not occurred with respect to the issues on discovered peril, Ford v. Panhandle & S. F. Ry., 151 Tex. 538, 252 S.W.2d 561; Texas & N. O. R. R. v. Krasoff, 144 Tex. 436, 191 S.W.2d 1; East Texas Theaters, Inc. v. Swink, 142 Tex. 268, 177 S.W.2d 195; Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112, attractive nuisance; Eaton v. R. B. George Investments, Inc., 152 Tex. 523, 260 S.W.2d 587, and res ipsa loquitur; Thompson v. Brown, Tex.Civ. App., 222 S.W.2d 442; Rogers v. Coca Cola Bottling Co., Tex.Civ.App., 156 S. W.2d 325. Recently this court repulsed efforts to cut the lookout issue into several possible factual inquiries. Traywick v. Goodrich, Tex.Civ.App., 364 S.W.2d 190.

the control issue without the specific issues; or the specific issues without the control issue, but not both.

Every reason which one can give for the elimination of the issue inquiring about the exercise of proper control, can with equal logic be given against the discovered peril, the attractive nuisance and the damage issues, as well as the broad submission of issues in all other classes of cases except negligence cases. Fox v. Dallas Hotel Co. is not violated in any of those instances.

The opinion of the Court of Civil Appeals was right when it gave effect to the specific jury findings over the finding on proper control. That is settled law. When this court goes further and holds that an objection to the control issue kills it and takes all discretion from the trial judge so that he must refuse to submit it, we have closed the door upon our best and last opportunity for the common law to reduce the number of issues and to simplify the charge.

With that part of the majority opinion that totally eliminates the proper control issue upon objection, I respectfully disagree.