**AETNA CASUALTY & SURETY COMPANY, Appellant,**

**v.**

**Ruby K. BROWN et vir, Appellees.**

No. 17166.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 29, 1971.

Rehearing Denied Feb. 26, 1971.

Fillmore, Lambert, Farabee & Purtle, and Larry Lambert, Wichita Falls, for appellant.

Schenk & Wesbrooks, Wichita Falls, for appellees.

OPINION

LANGDON, Justice.

This is a Workmen's Compensation case. Judgment, based upon a jury verdict, was rendered awarding the plaintiff, Mrs. Ruby K. Brown, compensation for total and permanent disability in a lump sum, plus medi-

cal expenses in the amount of $11,509.67. The appeal is from that judgment based upon eight points of error.

We affirm.

Plaintiff began work for the Woman's Forum on the 1st day of October, 1968. She continued such work until the 10th day of January, 1969. On the 5th day of December, 1968, the Woman's Forum was catering a party for 710 employees of the City of Wichita Falls. Plaintiff had the responsibility of cooking the roasts and the vegetables. The roasts were placed in cast aluminum pans and together weighed approximately 68 pounds. In the process of cooking these roasts she was requested to check them. In doing so she pulled the grill out which contained the pans with the roasts and the grill and its contents almost got away from her. In an effort to rescue the roasts, plaintiff injured her back.

At this time the plaintiff experienced "needle-like pain" shooting through her back and exclaimed, "Oh, I hurt my back." This statement of injury was within the hearing of a co-worker, Mrs. Louise Carpenter. Plaintiff, as well as the other employees of the Woman's Forum, was laid off until December 23, the date on which another party was to be given. Finally on the 10th day of January in an effort to continue working, plaintiff had returned to the Woman's Forum. However, the pain in her back became so excruciating that she could not stand it and had to leave. Then on the 13th day of January, plaintiff told her food service manager, Miss Mildred Powell, "'I hurt my back out there,' and she said, 'Well, when?' And I said, 'On that big party that night, on those roasts.' * * * we had talked about that, but I didn't tell her I hurt my back. But I told her that day."

Thus the notice given by the plaintiff was nine days past the thirty day period within which notice is required by Article 8307, Vernon's Ann. Civ.St., Sec. 4a. This section provides that, " * * * no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury * * *. For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board."

On the question of notice the court submitted Special Issues Nos. 16, 17, 18 and 19. In answer to these special issues, each of which was conditioned on the answer to the previous issue, the jury found respectively that the defendant had not learned from any source within thirty days after December 5, 1968, that plaintiff was claiming she received an injury on the job; that the plaintiff gave defendant notice of such injury on January 13, 1969; that until the notice was given the plaintiff believed the injury of December 5, 1968, would not disable her; that such belief prevented her giving such notice until it was actually given and that a reasonably prudent person would, under the same or similar circumstances, for such reason, delay such notice until January 13, 1969.

By its first two points the appellant asserts the court erred in overruling its motions for instructed verdict and for judgment non obstante veredicto when appellees did not give notice of injury within thirty (30) days, and when as a matter of law she did not show "good cause" for such failure.

By its points three, four and five, respectively, the appellant contends the court erred in submitting Special Issues Nos. 17, 18 and 19 and in failing to disregard the answers of the jury thereto because there is no evidence of probative force in support of such submissions or answers. The sixth point asserts that such answers are so against the great weight and preponderance of the evidence as to be manifestly unjust.

The appellant briefs and argues the first six points as a group. We will treat them

in the same manner since all relate to the single question of notice.

The defendant in its brief states that, "There are some obvious differences between good cause for failing to give notice within thirty (30) days, and good cause for failing to file a claim within six (6) months. However, the Courts considering good cause for failure to give notice usually quote freely from cases involving failure to file a claim within six months and vice versa." A review of the authorities will support this general statement where it is confined to the elements comprising good faith. See Booth v. Texas Employers' Ins. Ass'n, 132 Tex. 237, 123 S.W.2d 322 (Tex. Com.App., Sec. B, 1938).

■ In the case at bar the plaintiff's showing of "good cause" for failure to give notice within the 30 day period is determinative of her right to recover in this cause and she has the burden on such issue. Texas Employers' Ins. Ass'n v. Hilderbrandt, 62 S.W.2d 209 (Beaumont, Tex. Civ.App., 1933, no writ hist.).

It is the contention of the defendant that the plaintiff gave only two reasons for her failure to give notice, i.e., (1) she thought Miss Powell would ignore her anyway, and (2) she would have lost her job. Thus, says the defendant, the plaintiff limited the scope of her "good cause" and there is no evidence or insufficient evidence to support the issues as to her belief that her injury was not disabling.

Defendant cites Texas Indemnity Ins. Co. v. Cook, 87 S.W.2d 830 (Austin, Tex. Civ.App., 1935, writ ref.), which holds that "Good cause for delay from the viewpoint of ordinary prudence is ordinarily a fact question; but where the evidence taken most strongly in favor of the claimant admits of but one reasonable conclusion negativing good cause, the question becomes one of law."

This, without question, is the law in Texas. However, when the testimony of the plaintiff, considered as a whole, is examined it is obvious that the jury in considering the questioned issues would find support in the evidence in answering either way. The evidence did not admit of but one reasonable conclusion which would negate good cause and thus a fact issue on the question was presented which was resolved against the defendant.

The plaintiff at one point testified, "No. I kept thinking it would be better, it would be okay. Just from day to day, I prayed and I couldn't afford to quit. I had to go on."

The testimony of Dorothy Louise Carpenter was to the effect that she saw the plaintiff hurt herself on the job. She explained how the injury came about and said thereafter she asked the plaintiff, " 'Did you hurt your back very bad?' And she said, 'I think I just jerked a kink in it.' " At another point the plaintiff testified that, "I thought it was a crick in my back. * * * My husband had had one and he said, 'Oh there's nothing to it,' he said, 'I worked mine out; I went on back to work.' Well I had the same thing he did."

■ In our opinion the above testimony indicates the plaintiff considered her injury was trivial and would not disable her and that it is adequate evidence to support the court's submission of the issues in question and the answers of the jury thereto. Having examined the record as a whole, we do not consider such answers to be against the great weight and preponderance of the evidence.

Further on the issue of good cause we deem the claimant's testimony concerning her visit to see Dr. Ted Alexander, the osteopath, for her back condition to be significant. Concerning this visit she stated, "I thought maybe if I could get it straightened out, if he could help me, take some of the pain out, it would be all right but it didn't work that way." She first came under the attention of Dr. Alexander, according to Dr. Harry Ledbetter, on February 4th. Thus, after the notice was given on

January 13, 1969, the plaintiff was still of the opinion she would be all right.

We do not consider the authorities cited by the appellant to be controlling.

Concerning the elements of "good cause" see Texas Employers Insurance Association v. Sapien, 458 S.W.2d 203 (El Paso, Tex.Civ.App., 1970, ref., n.r.e.). The case pronounces the established principle that good faith, belief on the part of the claimant that her injuries were not serious constitutes "good cause" for failure to present the claim within the statutory period providing belief meets the test of ordinary prudence. See the cases cited in the above case and Northwestern National Ins. Co. v. Kirchoff, 427 S.W.2d 638, 642 (Houston, Tex.Civ.App., 1968, no writ hist.). The latter case speaks to the relevance of the time factor.

Under its point 7 the defendant contends the court erred in rejecting the testimony of Dr. Van Deventer that chiropractic manipulations are the most common cause of ruptured discs as not being responsive, and point 8 in admitting the testimony of the same doctor concerning the gory details of disc surgery when it was not reasonably probable that the plaintiff would undergo such procedure. The latter testimony was read from the deposition of the doctor.

In support of its 7th point the defendant cites McCormick & Ray, Texas Law of Evidence, Sec. 582; 62 Tex.Jur.2d 50–55, Witnesses, Sec. 169, in which non responsive answers are discussed. Also cited is the case of Dallas Transit Company v. Hammer, 390 S.W.2d 823 (Dallas, Tex. Civ.App., 1965); Hammer v. Dallas Transit Company, 400 S.W.2d 885 (Tex.Sup., 1966); and Dallas Transit Company v. Hammer, 404 S.W.2d 85 (Dallas, Tex.Civ. App., 1966). Essentially the above authorities stand for the proposition that the admission of unresponsive evidence, if otherwise admissible and relevant will not constitute reversible error.

■ In the case at bar the claimant had not gone to a chiropractor for adjustments nor did she receive any manipulations from her osteopathic doctor and therefore the rejected testimony, even though it had been responsive, would not have been relevant. It was Doctor Ledbetter's opinion as to the identity between osteopathic adjustments and chiropractic manipulations and he had no connection with the survey and the observations testified to by Dr. Van Deventer concerning the most common cause of ruptured discs.

In connection with its point of error No. 8 the defendant cites Ins. Co. of North America v. Myers, 411 S.W.2d 710, 713 (Tex.Sup., 1966), to the effect that expert medical testimony is confined to results reasonably to be anticipated and to an excerpt from the defendant's objection to this line of testimony.

The case above cited does not support the point.

■ There was no admission of liability in the case at bar. The questioned testimony was introduced to reflect the serious nature of the injury involved. It appears from the testimony that such surgery will in all medical probability have to be performed to alleviate at least to some extent the claimant's disc problem.

In our opinion the testimony is clearly within the rule of Insurance Company of North America v. Myers, 411 S.W.2d 710, 713 (Tex.Sup., 1966), supra, which was cited by the defendant. See also Lee v. Glad, 267 S.W.2d 230 (Galveston, Tex.Civ.App., 1954, writ dism.), and Travelers Insurance Company v. Walkovak, 390 S.W.2d 75 (Houston, Tex.Civ.App., 1965, ref., n.r.e.). The testimony complained of in Point 8 was not improper for the limited purposes for which it was presented.

■ Further, if the exclusion of the testimony complained of under point seven and the admission of the testimony com-

plained of under point 8 was error in either or both situations such error was harmless. Rule 434, Texas Rules of Civil Procedure; Ford v. Aetna Ins. Co., 394 S. W.2d 693 (Corpus Christi, Tex.Civ.App., 1965, ref., n.r.e.).

All points of error are overruled and the judgment of the trial court is affirmed.